CHARLES BURSTON, Respondent, *v.* GARRET BUILDING CORPORATION et al., Defendants, and JEROME LAKE, Appellant.

(Argued October 10, 1929; decided November 19, 1929.)

*Adrian D. Stevenson* for appellant. The liability of defendant Lake is *strictissimi juris* and cannot be extended beyond the plain and specific language of his bond. (*Peoria Savings Co.* v. *Elder*, 168 Ill. 55; *People* v. *Lee*, 104 N. Y. 441; *Evansville Nat. Bank* v. *Kaufman*, 93 N. Y. 273; *Gales* v. *McKee*, 13 N. Y. 232; *People* v. *Chalmers*, 60 N. Y. 158; *Kingsbury* v. *West Fall*, 61 N. Y. 356.) The bond of defendant Lake is not a guaranty of the mortgage contract nor of any bond and he is not bound thereby. (*Dougan* v. *Evansville V. T. H. R. Co.*, 15 App. Div. 483.)

*Charles Burston* and *Morris I. Gerber* for respondent. All of the instruments having been delivered to the plaintiff simultaneously and as part and parcel of one single transaction, must be read and construed together and must be treated as one contract. (*Elterman* v. *Hyman*, 192 N. Y. 117; *Smith* v. *Molleson*, 148 N. Y. 241; *Kent* v. *Universal Film Mfg. Co.*, 200 App. Div. 539; *Atwater & Co.* v. *Pennsylvania R. R. Co.*, 246 N. Y. 519; *Kidd* v. *McCormick*, 83 N. Y. 391; *Westcott* v. *Fidelity Deposit Co.*, 87 App. Div. 497; *Curtis* v. *Tyler*, 9 Paige, 431; *Sonnenborn* v. *Libbey*, 102 N. Y. 539; *Garrison* v. *Krenshaw Eng. & Const. Co.*, 198 App. Div. 1020.)

CARDOZO, Ch. J. The Ainsworth Construction Corporation was the owner as mortgagee of a bond and mortgage to secure the payment of $65,000, payable in installments. There was to be a payment of $2,250 on January 1, 1928, and like sums were to mature quarterly thereafter until October 1, 1930, when the principal was to be paid in full. Non-payment of any installment, or

of interest or taxes, was to mature the whole debt at the option of the creditor. The mortgagee wished to sell the bond and mortgage to the plaintiff, who was unwilling to buy without a guaranty of payment. Thereupon, the defendant Lake, the president of the mortgagee corporation, delivered to the plaintiff this collateral bond:

" KNOW ALL MEN BY THESE PRESENTS, that I, JEROME LAKE, am firmly held and bound unto CHARLES BURSTON, in the principal sum of $65,000, lawful money of the United States, to be paid to the said Charles Burston, his heirs, legal representatives and assigns, for which payment well and truly to be made, I do bind myself, my heirs, executors, administrators and assigns firmly by these presents, sealed with my seal this 7th day of October, 1927.

" The condition of the above obligation is such that if GARRET BUILDING CORPORATION, or its successors or assigns or any owner of the premises located on the northeasterly corner of 84th Street and 4th Avenue, in the Borough of Brooklyn, City of New York, and known as the Hotel Madrid, shall well and truly pay or cause to be paid unto the above named Charles Burston, his heirs, legal representatives and assigns the said sum of $65,000 as follows: $2250 on the 1st day of January, 1928, and $2250 quarterly thereafter on the 1st days of April, July, October and January of each year until the 1st day of October, 1930, when the entire unpaid remainder of said principal sum shall become due and payable, together with interest upon said principal sum and the unpaid balances thereof from the 5th day of October, 1927, payable quarterly on the installment days as aforesaid, then the above obligation shall be void, otherwise to remain in full force, virtue and effect."

" JEROME LAKE [L. s]. "

Garret Building Corporation, the mortgagor, made default during 1928 in the payment of installments of

principal as well as interest and taxes. Upon this, the plaintiff gave notice of election to declare the mortgage due. In the foreclosure suit which followed, he joined Lake as a defendant with appropriate allegations as to the execution of the guaranty, and prayed a personal judgment to the extent of any deficiency resulting on a sale. The Supreme Court at Special Term dismissed the complaint as to Lake, holding that the collateral bond or guaranty did not incorporate the provisions of the principal bond and mortgage for the acceleration of the debt, and that its obligation did not mature (except as to the overdue installments) till October, 1930. The Appellate Division reversed, and gave judgment for the plaintiff.

Originally, at common law, the penalty of a bond was payable according to its terms on the breach of a condition, without reference to the damage (*Sun P. & P. Assn.* v. *Moore*, 183 U. S. 642, 660; 2 Williston on Contracts, §§ 774, 775). With the growth of courts of equity, the chancellor gave relief by enjoining the collection of the judgment if there was hardship or oppression in the enforcement of the bond according to its letter. In the absence of such restraint the common-law courts pursued the even tenor of their way and applied the ancient rule. The first inroad upon its rigor was the outcome of a statute. The statute 8 & 9 William III, chapter 11, section 8, enacted in 1697, followed by that of Anne (4 & 5 Anne, ch. 16, §§ 12, 13), led to a new practice by which judgment was rendered for the penalty, but a memorandum was indorsed upon the execution confining the recovery to the damages sustained. A like practice was followed in some of our own States either by force of new enactments or by adoption of the practice inherited from abroad. Thus in *Warwick* v. *Matlack* (7 N. J. L. 165) the defendant gave a bond for the payment of a debt and interest with warrant of attorney. The debt, when contracted, was not subject to any pro-

vision for the acceleration of the principal. Default being made in the payment of an installment of the interest, the court gave judgment for the penalty, but confined the execution to the installment overdue (cf. *Willoughby* v. *Swinton*, 6 East, 550; *Murray* v. *Earl of Stair*, 2 B. & C. 82). In New York the practice is less roundabout, at least since the merger of law and equity. Here, in an action on the bond, there may be remission of the penalty without circuity of procedure (cf. Civ. Prac. Act, § 160, formerly Code of Civ. Pro. § 1915). Even so, the principles governing relief are not different from those that moved the conscience of the chancellor.

By the letter of this bond the entire principal is due from the defendant if there is default in the performance of any part of the condition. He is to be bound in the full amount unless the mortgagor or owner shall pay at the appointed times. There is no doubt that the condition would have been so read at common law. (*Warwick* v. *Matlack, supra*). If relief is to be given against the letter of the covenant, it can only be upon the ground that there is something unconscionable in a provision that upon non-payment of one installment of a debt, there shall be payment of the whole. No such principle can be extracted from the precedents (*Noyes* v. *Anderson*, 124 N. Y. 175, 180). If we were to state a general principle, it would have to be the other way. We do better, however, not to generalize at all, since there may be a failure to make allowance for exceptional conditions of time or place or circumstance. We are rather to ask ourselves the question what the chancellor would have said in the circumstances of this particular case if the defendant had gone into the Chancery with a petition for relief upon the score of hardship and oppression.

We think the chancellor in answer would have held him to his word. True, indeed, it is that the terms of the principal bond and mortgage were not repeated in the

collateral bond, but they were not unknown or forgotten. The signer of the guaranty was no stranger to the transaction, no unsuspecting volunteer. He was the president of a corporation that was trying to sell the mortgage to the plaintiff, and get the money in its grasp. He knew that if installments were overdue, there might be a call of the whole debt, and experience must have told him of the probability that the call would quickly follow. He cannot have supposed with reason that after a sale under foreclosure with a judgment for a deficiency against the principal obligor, his own obligation as surety would be postponed for months or years. The transaction as he knew it was notice to him as it was notice to the plaintiff that payment of the whole in the event of default in any part was of the essence of the bargain. Good conscience does not call in such conditions for a relaxation of the letter out of charity to the debtor. Good conscience would be flouted, with injustice to the creditor, if charity were to lead to a refusal to enforce the bond as written (*Protector Endowment L. & A. Co.* v. *Grice*, L. R. [5 Q. B. D.] 592, 596; *Wallingford* v. *Mut. Soc.*, L. R. [5 App. Cas.] 685, 696, 702, 705; *Thompson* v. *Hudson*, L. R. [4 Eng. & I. App. (H. L.)] 1, 15; *Noyes* v. *Anderson, supra*).

Whether there is hardship or none in the enforcement of a covenant may depend upon many circumstances extrinsic thereto, including the obligor's knowledge of the end and aim of the transaction. To give heed to such circumstances is not to vary the covenant by parol, for the bond is enforced according to the letter. It is to ascertain by extrinsic evidence whether relaxation of the letter will be in furtherance of justice. An obligor writing such a guaranty with all the knowledge that this defendant had of the principal transaction, will be held to strict performance as nominated in the bond. Acceleration for such a one is not punishment, a something superadded to his indebtedness as retribution for a wrong.

At most, it is the withdrawal of a privilege or favor. The indebtedness matures in obedience to conditions that were inherent in its origin (*Protector Endowment L. & A. Co.* v. *Grice, supra; Wallingford* v. *Mut. Soc., supra*).

The judgment should be affirmed with costs.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.